Nos. 17-1155, 17-1181

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

AIR ALLIANCE HOUSTON, *et al.*,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, *et al.*,

*Respondents*.

———————————

Petition for Review of Final Administrative Action of the
United States Environmental Protection Agency

———————————

**PROOF BRIEF OF RESPONDENT-INTERVENORS STATES OF
LOUISIANA, ARIZONA, ARKANSAS, FLORIDA, KANSAS, THE
COMMONWEALTH OF KENTUCKY BY AND THROUGH GOVERNOR
BEVIN, OKLAHOMA, SOUTH CAROLINA, TEXAS, UTAH, WEST
VIRGINIA, AND WISCONSIN**

———————————

JEFF LANDRY
ATTORNEY GENERAL OF LOUISIANA
ELIZABETH B. MURRILL (LA# 20685)
  SOLICITOR GENERAL
murrille@ag.louisiana.gov

MICHELLE M. WHITE (LA# 26988)
  ASSISTANT SOLICITOR GENERAL
Louisiana Department of Justice
P.O. Box 94005
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
Fax: (225) 326-6099
whitemi@ag.louisiana.gov
December 22, 2017        ***Counsel for the State of Louisiana***

(*Additional counsel listed below*)

MARK BRNOVICH
  ATTORNEY GENERAL OF ARIZONA
DOMINIC E. DRAYE
  SOLICITOR GENERAL
  *Counsel of Record*
1275 W. Washington
Phoenix, AZ  85007
Tel: (602) 542-3333
solicitorgeneral@azag.gov
**Counsel for State of Arizona**

LESLIE RUTLEDGE
  ATTORNEY GENERAL OF ARKANSAS
LEE RUDOFSKY
  SOLICITOR GENERAL
NICHOLAS J. BRONNI
  DEPUTY SOLICITOR GENERAL
Office of the Arkansas Attorney General
  *Counsel of Record*
323 Center Street, Ste. 400
Little Rock, AR  72201
Tel: (501) 682-6302
nicholas.bronni@arkansasag.gov
**Counsel for State of Arkansas**

PAMELA JO BONDI
  ATTORNEY GENERAL OF FLORIDA
AMIT AGARWAL
  SOLICITOR GENERAL
EDWARD M. WENGER
  CHIEF DEPUTY SOLICITOR GENERAL
  *Counsel of Record*
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL  32399-1050
Tel: (850) 414-3681
Fax: (850) 410-2672
amit.agarwal@myfloridalegal.com
**Counsel for State of Florida**

DEREK SCHMIDT
  ATTORNEY GENERAL OF KANSAS
JEFFREY A. CHANAY
  CHIEF DEPUTY ATTORNEY GENERAL
  *Counsel of Record*
BRYAN C. CLARK
  ASSISTANT SOLICITOR GENERAL
120 S.W. 10th Avenue, 3rd Floor
Topeka, KS 66612
Tel: (785) 368-8435
Fax: (785) 291-3767
jeff.chanay@ag.ks.gov
**Counsel for State of Kansas**

COMMONWEALTH OF KENTUCKY, BY
AND THROUGH GOVERNOR MATTHEW G.
BEVIN
M. STEPHEN PITT
  GENERAL COUNSEL
S. CHAD MEREDITH
  DEPUTY GENERAL COUNSEL
   *Counsel of Record*
700 Capital Ave., Ste 100
Frankfort, KY 40601
Tel: (502) 564-2611
Chad.meredith@ky.gov
**Counsel for Commonwealth of
Kentucky**

ALAN WILSON
  ATTORNEY GENERAL OF SOUTH
CAROLINA
JAMES EMORY SMITH, JR.
  DEPUTY SOLICITOR GENERAL
   *Counsel of Record*
P.O. Box 11549
Columbia, SC 29211
Tel: (803) 734-3680
Fax: (803) 734-3677
esmith@scag.gov
**Counsel for State of South Carolina**

SEAN REYES
  ATTORNEY GENERAL OF UTAH
TYLER R. GREEN
  SOLICITOR GENERAL
   *Counsel of Record*
Utah State Capitol Complex
350 North State Street, Suite 230
Salt Lake City, UT 84114-2320
tylergreen@agutah.gov
**Counsel for State of Utah**

MIKE HUNTER
  ATTORNEY GENERAL OF OKLAHOMA
MITHUN MANSINGHANI
  SOLICITOR GENERAL
   *Counsel of Record*
Oklahoma Office of the Attorney
General
313 N.E. 21st Street
Oklahoma City, OK 73105
Tel: (405) 521-3921
Fax:(405) 522-0608
Mithun.mansinghani@oag.ok.gov
**Counsel for State of Oklahoma**

KEN PAXTON
  ATTORNEY GENERAL OF TEXAS
SCOTT A. KELLER
  SOLICITOR GENERAL
   *Counsel of Record*
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 936-1700
Scott.keller@texasattorneygeneral.gov
**Counsel for State of Texas**

PATRICK MORRISEY
  ATTORNEY GENERAL OF WEST
VIRGINIA
ERICA N. PETERSON
  DEPUTY SOLICITOR GENERAL
   *Counsel of Record*
State Capitol Building 1, Room 26-E
Tel: (304) 558-2021
Fax: (304) 558-0140
Erica.n.Peterson@wvago.gov
**Counsel for State of West Virginia**

BRAD SCHIMEL
  ATTORNEY GENERAL OF WISCONSIN
MISHA TSEYTLIN
  SOLICITOR GENERAL
   *Counsel of Record*
Wisconsin Department of Justice
17 West Main Street
Madison, WI 53707-7857
Tel: (608) 267-9323
tseytlinm@doj.state.wi.us
***Counsel for Intervenor State of
Wisconsin***

# CERTIFICATE AS TO PARTIES, RULINGS,
## AND RELATED CASES

Pursuant to Circuit Rule 28(a), Respondent-Intervenors States of Louisiana, Arizona, Arkansas, Florida, Kansas, the Commonwealth of Kentucky by and Through Governor Bevin, Oklahoma, South Carolina, Texas, Utah, West Virginia, and Wisconsin certify:

**(A) Parties and Amici.**

Except for the following, all parties, intervenors, and *amici* appearing before this Court are listed in the Brief for Community Petitioners.

Amici

No. 17-1155: Public Citizen Litigation Group; Institute for Policy Integrity at New York University School of Law (for petitioners).

No. 17-1181: Public Citizen Litigation Group; Institute for Policy Integrity at New York University School of Law (for petitioners).

**(B) Rulings Under Review.**

References to the rulings at issue appear in the Brief for Community Petitioners.

**(C) Related Cases.**

Respondent-Intervenors States are aware of the following related cases pending before this Court:

No. 17-1181 New York *et al*. v. EPA (consolidated with the lead case here, No. 17-1155).

In addition, the following set of cases has been consolidated as No. 17-1085:

No. 17-1085, American Chemistry Council v. EPA;

No. 17-1087, Chemical Safety Advocacy Group v. EPA;

No. 17-1088, Utility Air Regulatory Group v. EPA.

These cases seek judicial review of the EPA action entitled "Accidental Release Prevention Requirements: Risk Management Programs Under the Clean Air Act," 82 Fed. Reg. 4594 (Jan. 13, 2017).

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, .......................................................i

TABLE OF AUTHORITIES ...............................................................................iv

GLOSSARY ........................................................................................................vi

JURISDICTIONAL STATEMENT .....................................................................1

STATEMENT OF ISSUES .................................................................................1

STATUTES AND REGULATIONS .....................................................................1

STANDARD OF REVIEW .................................................................................1

INTRODUCTION ...............................................................................................1

STATEMENT OF THE CASE .............................................................................3

SUMMARY OF ARGUMENT ...........................................................................7

ARGUMENT .......................................................................................................7

    **I.**    Petitioners Fail to Demonstrate that EPA Lacked Authority To Delay the Effective Date of the RMP Amendments or That EPA's Action Was Arbitrary and Capricious. ............................7

        **A.**    Practicability and the Compliance Deadlines ............................9

        **B.**    Reasoned Decision-Making .......................................................12

CONCLUSION ...................................................................................................15

CERTIFICATE OF COMPLIANCE WITH WORD LIMITATIONS AND TYPEFACE REQUIREMENTS ................................................................19

Attachment A, Declaration of James Waskom, Director, Office of Homeland Security, State of Louisiana (Dec. 20, 2017).

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*F.C.C. v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009)..................................................................................8

## Statutes

6 U.S.C. § 314(a)(5)..................................................................................11

CAA § 112(r)(7); 42 U.S.C. § 7412(r)(7)......................................................7, 8, 9

CAA § 112(r)(7)(A); 42 U.S.C. § 7412(r)(7)(A)................................................8

CAA § 112(r)(7)(B)(i); 42 U.S.C. § 7412(r)(7)(B)(i) .......................................8

Emergency Planning and Community Right-to-Know Act, 42 U.S.C.
§§ 11001-11050 ..................................................................................5

Homeland Security Act of 2002, 6 U.S.C. §§ 101-557 (2002) ..............................11

## Federal Register

*Accidental Release Prevention Requirements: Risk Management
Programs Under the Clean Air Act; Proposed Rule*, 81 Fed. Reg.
13,638 (Mar. 14, 2016) ........................................................................3

*Accidental Release Prevention Requirements: Risk Management
Programs Under the Clean Air Act; Final rule*, 82 Fed. Reg. 4594
(Jan. 13, 2017)....................................................................................2, 15

*Accidental Release Prevention Requirements: Risk Management
Programs Under the Clean Air Act; Further Delay of Effective;
Proposed rule*, 82 Fed. Reg. 16,146 (Apr. 3, 2017) ..............................6

*Accidental Release Prevention Requirements: Risk Management
Programs Under the Clean Air Act; Further Delay of Effective
Date*, 82 Fed. Reg. 27,133 (June 14, 2017) ............................2, 3, 6, 9, 12, 13, 14

**Miscellaneous**

Letter from Jeff Landry and Ken Paxton, Attorneys General of
    Louisiana and Texas, to Gina McCarthy, Adm'r, EPA (May 3,
    2016), Docket No. EPA-HQ-OEM-2015-0725-0433...................................4, 14

Comments of Nat'l Ass'n of SARA Title III Program Officials on
    RMP Amendments Proposed Rule (May 12, 2016), Docket No.
    EPA-HQ-OEM-2015-0725-0510 .......................................................10

Letter from Scott Pruitt, AG, State of Oklahoma, et al. to Gina
    McCarthy, Adm'r, EPA (July 27, 2016), Docket No. EPA-HQ-
    OEM-2015-0725-0624..................................................................4, 14

Louisiana, *et al.*, Pet. for Reconsideration and Stay, (Mar. 14, 2017),
    Docket No. EPA-HQ-OEM-2015-0725-0762 ....................................5

EPA, General RMP Guidance - Chapter 8: Emergency Response
    Program (Apr. 2004) ........................................................................10

# GLOSSARY

| | |
|---|---|
| AG | Attorney General |
| CAA | Clean Air Act |
| Delay Rule | *Accidental Release Prevention Requirements: Risk Management Programs Under the Clean Air Act; Further Delay of Effective Date*, 82 Fed. Reg. 27,133 (June 14, 2017) |
| EPA or the Agency | U.S. Environmental Protection Agency |
| EPCRA | Emergency Planning and Community Right-to-Know Act, 42 U.S.C. §§ 11001-11050 |
| OMB | Office of Management and Budget |
| OSHA | Occupational Safety and Health Administration |
| RMP | Risk Management Program |
| RMP Amendments | *Accidental Release Prevention Requirements: Risk Management Programs Under the Clean Air Act; Final rule*, 82 Fed. Reg. 4594 (Jan. 13, 2017) |

## JURISDICTIONAL STATEMENT

State Respondent-Intervenors adopt the Jurisdictional Statement in EPA's brief.

## STATEMENT OF ISSUES

State Respondent-Intervenors adopt the Statement of Issues in EPA's brief.

### STATUTES AND REGULATIONS

All applicable statutes and regulations are attached to EPA's brief.

### STANDARD OF REVIEW

State Respondent-Intervenors adopt the Standard of Review in EPA's brief.

## INTRODUCTION

The undersigned Respondent-Intervenor States (collectively "the States") respectfully submit this brief in support of Respondent United States Environmental Protection Agency ("EPA" or "the Agency"). State and local governments man the front lines of chemical facility accident prevention and response, community education, and emergency preparedness ensuring safety and security for their communities.

The States have been and remain strong and engaged supporters of efforts to regulate chemical facility safety for the benefit of the environment and surrounding communities. Our concern with the Risk Management Program (RMP)

Amendments[1] is that they do not further those efforts and may, in fact, frustrate their fundamental purpose.  The States timely and dutifully brought their concerns to EPA's attention during the RMP Amendment rulemaking process, but those concerns fell on deaf ears.  That is why we support the EPA's decision to revisit these issues, and the rulemaking specifically, to delay implementation of this regulation, while already extensive and protective regulations remain in place.  We believe these amendments, if implemented, without delay serves only to introduce confusion and disruption into already robust emergency response and preparedness command structures in place in the States, causing an unnecessary but greatly detrimental drain on the resources of the States as well as a potential threat to security.  Intending not to duplicate the arguments made by EPA and Industry Respondent-Intervenors, this brief focuses on the unique concerns of state agencies and law enforcement officials who administer the RMP program.  The States support the Delay Rule[2] because it reflects EPA's reasoned judgment that the RMP Amendments warrant careful reconsideration and that a modest delay of the effective date is necessary to allow EPA to undertake such reconsideration.  The Delay Rule ensures that provisions of the RMP Amendments that potentially threaten safety do not go into effect until EPA has a chance to address the serious

---

[1] 82 Fed. Reg. 4594 (Jan. 13, 2017) ("RMP Amendments") (JA__).
[2] 82 Fed. Reg. 27,133 (June 14, 2017) ("Delay Rule") (JA__).

concerns that states raised to EPA that were either ignored or not addressed adequately in the final rule.

Against this backdrop, the limited 20-month delay of the RMP Amendments constitutes a reasonable and prudent exercise of EPA's inherent authority to reconsider regulations. The delay is well within EPA's statutory authority to promulgate RMP regulations and set RMP effective dates based upon considerations of practicability. EPA articulated sufficient justification for the Delay Rule, including the need to re-evaluate based on significant concerns raised by States and other stakeholders during the rulemaking. Furthermore, the Delay Rule's impact on implementation of the substantive provisions of the RMP Amendments is limited, given that most all of the rule's core provisions were not scheduled to take effect until 2021 at the earliest. 82 Fed. Reg. at 27,139 (JA__).

## STATEMENT OF THE CASE

State Respondent-Intervenors adopt EPA's Statement of Facts and emphasize the following:

Many of the States participated actively in the rulemaking process for the RMP Amendments since EPA published its Notice of Proposed Rulemaking in March 2016.[3] In response to this proposal, numerous state officials—including current EPA Administrator Scott Pruitt, then Attorney General ("AG") for

---

[3] 81 Fed. Reg. 13,638 (Mar. 14, 2016) (JA__).

Oklahoma, as well as AGs from Louisiana, Kansas, Alabama, Nevada, Arizona, South Carolina, Arkansas, Utah, Florida, Wisconsin, Texas, and Georgia— submitted comments on the proposed rule, expressing significant concerns with proposed information disclosure requirements and other issues in the rule.[4]  These government partners of EPA also took the unusual step of meeting with the Office of Management and Budget ("OMB") as it completed its review of the RMP Amendments specifically to emphasize their concerns and because EPA had undertaken no outreach to its state partners after receiving comments.  Despite the significant concerns articulated by numerous stakeholders, EPA finalized the amendments with only slight modifications, in some instances *increasing* the risks and burdens of the rule as proposed.  EPA did not dispute that it failed to coordinate the rule with first responders, federal and state agencies, did not consider its impact on existing incident command structures, and did not evaluate those costs, but nevertheless, rushed the rule into effect at the eleventh hour of the last administration.

Following the rule's issuance on the eve of the administration change, several states filed administrative petitions for reconsideration, again raising a host

---

[4] *See, e.g., See* Letter from Jeff Landry and Ken Paxton, Attorneys General of Louisiana and Texas, to Gina McCarthy, Adm'r, EPA (May 3, 2016), Docket No. EPA-HQ-OEM-2015-0725-0433 ("Landry and Paxton Letter") (JA__); Letter from Scott Pruitt, AG, State of Oklahoma, *et al.* to Gina McCarthy, Adm'r, EPA (July 27, 2016), Docket No. EPA-HQ-OEM-2015-0725-0624 ("Pruitt Letter") (JA__).

of substantive concerns with the final rule, including EPA's failure to respond to our significant comments and highlighting errors in the final rule as issued. The States' petition addressed the anticipated impact of the rule on first responders and explained that the release of security-sensitive information mandated by the final rule would endanger both the public and first responders.[5] Specifically, the States raised the following:

- The information disclosure provisions in the RMP Amendments threaten homeland security by making covered facilities less safe, (JA__);

- The coordination and emergency response provisions in the RMP Amendments fail to account for overlapping requirements of the Emergency Planning and Community Right-to-Know Act ("EPCRA") and other laws touching upon emergency response, and constitute unfunded mandates that impose unjustified burdens on state and local emergency response and planning organizations, (JA__);

- The RMP Amendments are unsupported by accurate costs and benefits estimates, as required under applicable laws, (JA__); and

- Several problematic provisions in the RMP Amendments were finalized without being offered for comment in the Proposed Rule, (JA__).

---

[5] Louisiana, *et al.*, Pet. for Reconsideration and Stay, (Mar. 14, 2017), Docket No. EPA-HQ-OEM-2015-0725-0762 (JA__).

Administrator Pruitt granted our petitions for reconsideration as well as a three-month stay of the Amendments. He subsequently published a notice of proposed rulemaking for the Delay Rule, proposing to delay the RMP Amendments by 20 months, to February 19, 2019.[6] The Delay Rule, which is the only rule at issue here, was finalized in June 2017, after a public hearing and comment period. It delayed the effective date of the RMP Amendments generally, but in practical effect narrowly affected only one compliance date, the additional emergency response coordination requirements (March 14, 2018 compliance date), as well as changes to regulatory definitions and other related minor modifications. 82 Fed. Reg. at 27,133 (JA__).

The Delay Rule allows EPA much-needed time to consider carefully the onerous, and in our view, counterproductive, provisions of the RMP Amendments to determine whether their substantial compliance burdens and security risks are adequately justified by whatever benefits the rule might offer. It also alleviates the risk that state and local emergency response resources will be committed to implement changes necessary to ensure compliance with regulatory provisions in the RMP Amendments that may then change again as a result of the reconsideration proceedings. Not only are such changes a waste of limited resources, but they add confusion to any emergency response.

---

[6] 82 Fed. Reg. 16,146 (Apr. 3, 2017) (JA__).

## SUMMARY OF ARGUMENT

EPA acted well within its authority under the Clean Air Act ("CAA") to adopt the Delay Rule, and its action was eminently reasonable and thus not arbitrary and capricious. The States and other stakeholders articulated during the rulemaking process the numerous practicability concerns presented by the rules, including that the new coordination and emergency response provisions impose new regulatory burdens without any identifiable, commensurate benefits; the fact that the information disclosure requirements in the Amendments threaten the security of covered facilities; and that the Amendments create duplicative burdens for state and local emergency response organizations, given that they overlap with existing requirements under state and federal law. EPA was thus not only authorized to issue the Delay Rule but its decision to do so was necessitated under the circumstances.

## ARGUMENT

### I. Petitioners Fail to Demonstrate that EPA Lacked Authority To Delay the Effective Date of the RMP Amendments or That EPA's Action Was Arbitrary and Capricious.

The States support EPA and Industry-Intervenors' legal arguments with respect to EPA's authority under the CAA to adopt the Delay Rule. First, CAA Section 112(r)(7) confers upon EPA broad discretion to issue "reasonable" RMP regulations and, in promulgating such requirements, to establish "an effective date, as determined by the Administrator, assuring compliance *as expeditiously as*

*practicable*." 42 U.S.C. § 7412(r)(7)(A); (B)(i) (emphasis added). The plain language of CAA Section 112(r)(7) reflects Congress's clear intent to confer discretion to implement appropriate RMP regulations, including determining the factors relevant to establishing a "practicable" effective date. Second, EPA clearly met the "narrow" standard for "arbitrary and capricious" review, by "examin[ing] the relevant data and articulat[ing] a satisfactory explanation for its action." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (citation omitted). Indeed, not only was EPA's decision not arbitrary and capricious, but it was an eminently reasonable and appropriate exercise of discretion to preserve the status quo.

The States write here to emphasize (1) that the current regulatory structure provides significant protections and an adequate framework for communication, coordination, and response to emergency situations that threaten public safety, such that a delay in the RMP Amendments is reasonable and (2) specific aspects of the RMP Amendments that present practical implementation concerns for states, making compliance with the regulation impracticable in the time period allotted. *See* Attachment A, Declaration of James Waskom, Director, Office of Homeland Security, State of Louisiana (Dec. 20, 2017). Together, these support the reasonableness of EPA's decision that a finite 20-month delay is appropriate to complete reconsideration of these core issues.

## A. Practicability and the Compliance Deadlines

EPA reasonably exercised the discretion conferred by CAA Section 112(r)(7) in determining that an earlier effective date for the RMP Amendments would not be "practicable." 82 Fed. Reg. at 27,136 ("[W]e conclude that the delay of effectiveness for 20 months is as expeditious as practicable for allowing the [RMP Amendments] to go into effect.") (JA__). This determination was supported by EPA's recognition of the significant burdens and risks that the RMP Amendments would create for the regulated community, surrounding communities, and State/local emergency responders without proportional benefits.

As EPA noted in the Delay Rule, considerations of practicability under CAA Section 112(r)(7) do not prohibit "weighing the difficulties of compliance planning and other implementation issues," which are key considerations with respect to the proper effective date for the RMP Amendments. 82 Fed. Reg. at 27,137 (JA__). There are numerous implementation issues that make compliance with the Amendments as promulgated not "practicable" within the timeframes provided. In particular, the coordination and emergency response provisions in the RMP Amendments, which are slated to become effective March 14, 2018, will tax state and local emergency response resources. Because there is no provision for funding support of state and local emergency response personnel, these provisions are essentially unfunded mandates that will divert planning and preparedness resources

from the entities that need them most—those charged with community emergency response.[7]

Further, it is appropriate for EPA to consider, in analyzing the practicability of compliance with the RMP Amendments as promulgated, the numerous overlapping emergency response coordination and preparedness requirements in other regulations and statutes. *See, e.g.,* EPA, General RMP Guidance - Chapter 8: Emergency Response Program (Apr. 2004), at 8-8, *available a*t https://www.epa.gov/sites/production/files/2013-11/documents/chap-08-final.pdf (listing federal emergency planning regulations). These include the provisions of EPCRA, federal and state workplace safety requirements, and other state and local emergency preparedness requirements.

Aside from the obvious resource burdens, the overlap and confusion created by these duplicative requirements in the event of an actual emergency at a covered facility is a significant consideration in determining whether compliance is "practicable" at this time. Emergency situations pose inherently complex problems that require integrated, efficient, multifaceted response and depends heavily on quick and coordinated responses. Waskom Decl. ¶10. In the States' experience,

---

[7] *See, e.g*., Comments of Nat'l Ass'n of SARA Title III Program Officials on RMP Amendments Proposed Rule at 4 (May 12, 2016), Docket No. EPA-HQ-OEM-2015-0725-0510 (noting that the Emergency Response Preparedness Provisions of the RMP Amendments "are unworkable and . . . create unnecessary and substantial burdens on LEPCs and first responders") (JA__).

emergency response protocols are only effective where the chain of command is clear and there has been adequate time to practice and adapt to new roles and responsibilities.[8]  The new requirements of the RMP Amendments would create an overlay to the currently-existing incident comment structure, and it is not clear how these mandates would fit within the structure set forth under current law.  The resulting confusion and duplication make emergency response organizations *less* effective than they are currently.  Waskom Decl. ¶11 ("[A]dditional mandates of the RMP Amendments will likely cause confusion for responders and planning organizations, as it is not clear how these mandates fit within the existing incident command structure prescribed under current law.").  Further, the States believe that current legal requirements create an effective framework for emergency response. Waskom Decl. ¶7.

The Delay Rule is thus necessary to ensure not only that the emergency response and coordination provisions of the RMP Amendments are practicable— when considered carefully in relation to existing legal requirements and protocols—but also that these provisions do not create confusion among

---

[8] This basic principle was driving force behind the passage of the Homeland Security Act of 2002, 6 U.S.C. §§ 101-557 (2002).  *See* § 314(a)(5) where the Act requires "building a comprehensive incident management system with Federal, State, and local government personnel, agencies, and authorities, to respond to [terrorist] attacks and disasters."

responders, thereby reducing the effectiveness of their response efforts in the event of a chemical facility accident.

## B. Reasoned Decision-Making

EPA's action easily satisfies the legal standards to show that it is neither arbitrary nor capricious, as its justification for the Delay Rule is both adequate and reasonable. Furthermore, given the objections that were raised prior to issuance and in the reconsideration petitions, EPA's only responsible choice was to delay the effective date. Indeed, the Delay Rule reflects EPA's responsiveness to the significant concerns raised by the States, including:

- EPA's decision to finalize facility information disclosure and other requirements in the RMP Amendments that were not included for public comment in the Proposed Rule (*see* 82 Fed. Reg. at 27,137) (JA__);

- Facility security risks potentially created by the RMP Amendments that were not adequately addressed by EPA in the rulemaking process (*see* 82 Fed. Reg. at 27,138) (JA__);

- Insufficient cost-benefit analysis in support of the RMP Amendments, including a failure of EPA to quantify the benefits of the rule and the Agency's failure to fulfill its statutory obligations to consider the impacts of the rule on small businesses (*see id*.); and

- State agencies' concerns that the RMP Amendments created unjustified burdens on state and local emergency responders (*see id.*).

These concerns cast serious doubt upon the necessity for and prudence of the RMP Amendments and support the soundness of EPA's decision to delay their effectiveness.[9] *See* 82 Fed. Reg. at 27,139 ("Petitioners' claims that the new final rule provisions may cause harm to regulated facilities and local communities, and the speculative but likely minimal nature of the forgone benefits, form another rational basis for EPA to delay the effectiveness of the [RMP] Amendments and determine whether they remain consistent with the policy goals of the Agency.") (JA__); *see also* Waskom Decl. ¶13 (RMP Amendments prescribe the public disclosure of sensitive chemical facility information in a manner that could allow wrongdoers to target and exploit [any] security vulnerabilities at the facility, harming the surrounding community."); ¶18 ("RMP Amendments, if allowed to take effect within the timeframes originally prescribed, would not only pose significant risks to the safety of the communities in the vicinity of regulated facilities but would also burden state and local emergency response organizations,

---

[9] Note that while the State Respondent-Intervenors are concerned about the stated issues in the RMP Amendments, the Delay Rule will not impact the timing of the effectiveness of many of these provisions. The harm of delaying effectiveness is speculative and insubstantial because any suggested benefit of the Amendments would not occur until 2021, which consequently may bring Petitioners' standing to bring their challenge to the Delay Rule into question.

diminishing their ability to allocate scarce resources effectively.").  EPA reasonably and adequately explained that because the process of "evaluating these issues will be difficult and time consuming," a delay is warranted to allow "a comprehensive review of objections ... without imposing the rule's substantial compliance and implementation resource burden when the outcome of the review is pending."  82 Fed. Reg. at 27,136 (JA__).

Petitioners' assertion that "facilities and emergency responders will be less safe" because of the Delay Rule is simply unsupported by the record and, in fact, the record shows that allowing the rule to go into effect without meaningful reconsideration that is required here puts facilities and citizens of the States submitting this brief in jeopardy.  Waskom Decl. ¶18.  Several of the States submitted ample record evidence during the rulemaking process that in fact the *opposite* is true, *i.e.* the RMP Amendments risk making facilities and emergency responders less safe through its ill-conceived information disclosure requirements and through the diversion of emergency response resources.  *See, e.g.*, *supra* note 4 (Landry and Paxton Letter (JA__); and Pruitt Letter (JA__).

Further, the Delay Rule does not impact the effectiveness of the currently-applicable RMP requirements, *see* Waskom Decl. ¶7, which EPA has repeatedly acknowledged "have been effective in preventing and mitigating chemical accidents in the United States."  82 Fed. Reg. at 27,136 (citing 82 Fed. Reg. at

4595) (JA__); *see also* Waskom Decl. ¶¶7, 9.  EPA therefore acted reasonably in issuing the Delay Rule and, in fact, would have been *un*reasonable in failing to do so.

## CONCLUSION

For the foregoing reasons, the States submit that the petitions should be dismissed or denied.

Respectfully submitted,

/s/ Elizabeth B. Murrill
JEFF LANDRY
ATTORNEY GENERAL OF LOUISIANA
ELIZABETH B. MURRILL (LA# 20685)
  SOLICITOR GENERAL
murrille@ag.louisiana.gov
 MICHELLE M. WHITE (LA# 26988)
  ASSISTANT SOLICITOR GENERAL
Louisiana Department of Justice
P.O. Box 94005
1885 N. Third Street
Baton Rouge, Louisiana  70804
Tel: (225) 326-6766
Fax: (225) 326-6099
whitemi@ag.louisiana.gov
**Counsel for the State of Louisiana**

December 22, 2017

/s/ Dominic E. Draye

MARK BRNOVICH
  ATTORNEY GENERAL OF ARIZONA
DOMINIC E. DRAYE
  SOLICITOR GENERAL
  *Counsel of Record*
1275 W. Washington
Phoenix, AZ 85007
Tel: (602) 542-3333
solicitorgeneral@azag.gov
**Counsel for State of Arizona**


/s/ Amit Agarwal

PAMELA JO BONDI
  ATTORNEY GENERAL OF FLORIDA
AMIT AGARWAL
  SOLICITOR GENERAL
JEDWARD M. WENGER
  CHIEF DEPUTY SOLICITOR GENERAL
  *Counsel of Record*
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
Tel: (850) 414-3681
Fax: (850) 410-2672
amit.agarwal@myfloridalegal.com
**Counsel for State of Florida**

/s/ Lee Rudofsky

LESLIE RUTLEDGE
  ATTORNEY GENERAL OF ARKANSAS
LEE RUDOFSKY
  SOLICITOR GENERAL
NICHOLAS J. BRONNI
  DEPUTY SOLICITOR GENERAL
Office of the Arkansas Attorney General
  *Counsel of Record*
323 Center Street, Ste. 400
Little Rock, AR 72201
Tel: (501) 682-6302
nicholas.bronni@arkansasag.gov
**Counsel for State of Arkansas**


/s/ Jeffrey A. Chanay

DEREK SCHMIDT
  ATTORNEY GENERAL OF KANSAS
JEFFREY A. CHANAY
  CHIEF DEPUTY ATTORNEY GENERAL
  *Counsel of Record*
BRYAN C. CLARK
  ASSISTANT SOLICITOR GENERAL
120 S.W. 10th Avenue, 3rd Floor
Topeka, KS 66612
Tel: (785) 368-8435
Fax: (785) 291-3767
jeff.chanay@ag.ks.gov
**Counsel for State of Kansas**

/s/ M. Stephen Pitt
COMMONWEALTH OF KENTUCKY, BY
AND THROUGH GOVERNOR MATTHEW G.
BEVIN
M. STEPHEN PITT
  GENERAL COUNSEL
S. CHAD MEREDITH
  DEPUTY GENERAL COUNSEL
  *Counsel of Record*
700 Capital Ave., Ste 100
Frankfort, KY 40601
Tel: (502) 564-2611
Chad.meredith@ky.gov
**Counsel for Commonwealth of Kentucky**

/s/ James Emory Smith, Jr.
ALAN WILSON
  ATTORNEY GENERAL OF SOUTH
CAROLINA
JAMES EMORY SMITH, JR.
  DEPUTY SOLICITOR GENERAL
  *Counsel of Record*
P.O. Box 11549
Columbia, SC 29211
Tel: (803) 734-3680
Fax: (803) 734-3677
esmith@scag.gov
**Counsel for State of South Carolina**

/s/ Mithun Mansinghani
MIKE HUNTER
  ATTORNEY GENERAL OF OKLAHOMA
MITHUN MANSINGHANI
  SOLICITOR GENERAL
  *Counsel of Record*
Oklahoma Office of the Attorney
General
313 N.E. 21st Street
Oklahoma City, OK 73105
Tel: (405) 521-3921
Fax:(405) 522-0608
Mithun.mansinghani@oag.ok.gov
**Counsel for State of Oklahoma**

/s/ Scott A. Keller
KEN PAXTON
  ATTORNEY GENERAL OF TEXAS
SCOTT A. KELLER
  SOLICITOR GENERAL
  *Counsel of Record*
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 936-1700
Scott.keller@texasattorneygeneral.gov
**Counsel for State of Texas**

/s/ Tyler R. Green
Sean Reyes
  Attorney General Of Utah
Tyler R. Green
  Solicitor General
   *Counsel of Record*
Utah State Capitol Complex
350 North State Street, Suite 230
Salt Lake City, UT 84114-2320
tylergreen@agutah.gov
**Counsel for State of Utah**


/s/ Misha Tseytlin
Brad Schimel
  Attorney General Of Wisconsin
Misha Tseytlin
  Solicitor General
   *Counsel of Record*
Wisconsin Department of Justice
17 West Main Street
Madison, WI 53707-7857
Tel: (608) 267-9323
tseytlinm@doj.state.wi.us
**Counsel for Intervenor State of Wisconsin**

/s/ Thomas M. Johnson Jr.
Patrick Morrisey
  Attorney General Of West Virginia
Erica N. Peterson  Deputy Solicitor General
   *Counsel of Record*
State Capitol Building 1, Room 26-E
Tel: (304) 558-2021
Fax: (304) 558-0140
Erica.n.Peterson@wvago.gov
**Counsel for State of West Virginia**

## CERTIFICATE OF COMPLIANCE WITH WORD LIMITATIONS AND TYPEFACE REQUIREMENTS

Pursuant to Rule 32(a), (f), and (g) of the Federal Rules of Appellate Procedure and Circuit Rules 32(e)(1) and 32(e)(2)(C), I hereby certify that the foregoing Proof Brief of Respondent-Intervenors States of Louisiana, Arizona, Arkansas, Florida, Kansas, the Commonwealth of Kentucky by and through Governor Bevin, Oklahoma, South Carolina, Texas, Utah, West Virginia, and Wisconsin contains 3,018 words, as counted by a word processing system that includes headings, footnotes, quotations, and citations in the count.

I also certify that this brief complies with the word-count limitation of Fed. R. App. P. 32(e) as modified by this Court's September 26, 2017 order, in that, this brief and the brief for the Industry Intervenors together contain less than 11,000 words, as required by this Court's September 26 order.

I also certify that this brief complies with the typeface and type-style requirements of Rule 32(a)(5) and (6) of the Federal Rules of Appellate Procedure because it has been prepared in a proportionally spaced typeface using Microsoft Word™ 2010 with 14-point Times New Roman font.

*/s/ Elizabeth B. Murrill*
Elizabeth B. Murrill

## CERTIFICATE OF SERVICE

I hereby certify that, on this 22nd day of December 2017, a copy of the foregoing Proof Brief of Respondent-Intervenors States of Louisiana, Arizona, Arkansas, Florida, Kansas, the Commonwealth of Kentucky by and Through Governor Bevin, Oklahoma, South Carolina, Texas, Utah, West Virginia, and Wisconsin was served electronically through the Court's CM/ECF system on all ECF-registered counsel.

/s/ Elizabeth B. Murrill
Elizabeth B. Murrill

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| AIR ALLIANCE HOUSTON, et al., | |
| Petitioners, | |
| v. | CASE NO. 17-1155 |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | (and consolidated cases) |
| Respondents. | |

## DECLARATION OF JAMES WASKOM

I, James Waskom, declare as follows:

1. I have personal knowledge of the facts set forth in this declaration, and could and would competently testify thereto if called upon to do so.

2. I am the Director of the State of Louisiana Governor's Office of Homeland Security and Emergency Preparedness ("GOHSEP"). I have served in this capacity since appointed by Governor John Bel Edwards on January 11, 2016.

3. In my role as GOHSEP Director, I am responsible for homeland security and emergency and disaster preparedness and response for the State of Louisiana, overseeing the coordination of the State's activities to prevent, prepare for, respond to, recover from and mitigate against emergencies or disaster events.

4. In carrying out these responsibilities, I coordinate the activities of all agencies and organizations within the State of Louisiana and maintain liaisons with agencies and organizations of other states and of the federal government.

5. As GOHSEP Director, I am familiar with the various requirements for emergency preparedness and response in the State of Louisiana, including the existing Risk Management Program ("RMP") regulations of the United States Environmental Protection Agency ("EPA"), the emergency response preparedness requirements of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), and state law equivalents.

6. I am also familiar with the recent amendments finalized by EPA in January 2017 to the RMP regulations ("RMP Amendments" or "the Amendments").

**Statements Concerning the Adequacy of Protections Under Existing Requirements:**

7. Existing law, exclusive of the RMP Amendments, provide an adequate framework for communication, coordination, and response to emergency situations—such as a chemical facility accidents—that threaten public safety.

8. I have overseen the implementation of these requirements during my tenure as GOHSEP Director and have observed them being effectively executed to protect the public in various types of emergency and disaster scenarios.

9. The RMP Amendments do not add significant protections for communities in the event of a chemical facility accident, above and beyond those currently in place.

10. Effective and efficient emergency response requires State and local response organizations to understand the incident command structure in place for various types of situations. This structure is a product of the myriad regulations, protocols, and procedures established at the federal, state, and local levels and of its implementation through practice and real events.

11. The additional mandates of the RMP Amendments will likely cause confusion for responders and planning organizations, as it is not clear how these mandates fit within the existing incident command structure prescribed under current law.

12. Further, the Amendments mandate new coordination and emergency response obligations that overlap with pre-existing similar requirements, in a manner that will drain state and local resources and potentially render emergency response organizations less effective than they are currently.

13. The RMP Amendments prescribe the public disclosure of sensitive chemical facility information in a manner that could allow wrongdoers to target and exploit and security vulnerabilities at the facility, harming the surrounding community.

14. The mandates are thus contrary to the primary objectives of the RMP program, namely to enhance the safety of covered facilities for the benefit of communities.

15. Response organizations engage in and coordinate regular exercises to enhance their preparation for various types of incidents, as no response protocol is effective until it is adequately practiced and understood by all involved.

16. It is therefore critical that existing command and response structures be considered in the development of rules and that any changes to regulations affecting emergency response and coordination requirements afford ample lead time before becoming effective, so that responders and planning organizations have the opportunity to familiarize themselves with new procedure and protocols.

17. Further, it is also critical that state and local emergency response and planning organizations be able to allocate resources in a manner that best serves the needs of communities, as they are in the best position to the determine needs of a particular locale.

18. The RMP Amendments, if allowed to take effect within the timeframes originally prescribed, would not only pose significant risks to the safety of the communities in the

vicinity of regulated facilities but would also burden state and local emergency response organizations, diminishing their ability to allocate scarce resources effectively.

19. A 20-month delay of effectiveness of the Amendments will allow EPA, as well as stakeholders such as GOHSEP, to carefully reconsider the impacts of the new requirements, including compatibility with existing similar requirements, the adequacy of available resources needed to implement the new mandates, and whether the information disclosure requirements in the Amendments risk harm to surrounding communities.

I certify under penalty of perjury that the foregoing is true and correct.


Dated this 20 day of December, 2017.


_____

JAMES WASKOM
Director, Governor's Office of Homeland Security and Emergency Preparedness
State of Louisiana